[No. 12707.   Department One.   September 24, 1915.]

GEORGE FRIEND, *as Trustee etc., Appellant*, v. ROSENFELD-
ROVIG COMPANY *et al., Respondents.*[1]

BANKRUPTCY— PREFERENCES — AVOIDANCE — KNOWLEDGE OF TRANS-
FEREE.  The grantee in a bill of sale by an insolvent is not shown to
have had "reasonable cause to believe" that the enforcement of the
transfer would effect a preference, within the meaning of § 60 of the
Federal bankruptcy law, providing that all such transfers within
four months before filing the petition in bankruptcy shall be voidable
by the trustee, where it appears that the debtor-vendor, made a
sworn statement of the names and addresses of all his creditors, with
the amount of indebtedness owing, in compliance with the sales-in-
bulk act, Rem. & Bal. Code, § 5296, from which it appeared that he
was solvent, that the omission of the name of his principal creditor
rendered him liable to perjury, under § 5298 of the act, and that the
grantee took in good faith for the benefit of the creditors named,
without knowledge of any other creditor or of the vendor's insol-
vency.

Appeal from a judgment of the superior court for King
county, Frater, J., entered November 4, 1914, upon findings
in favor of the defendants, in an action by a trustee in bank-
ruptcy to recover the value of a stock of goods transferred
by an insolvent debtor, tried to the court.   Affirmed.

*Million & Houser*, for appellant.
*Brightman, Halverstadt & Tennant*, for respondent.

MOUNT, J.—This action was brought by the appellant to
recover from the respondents the value of a stock of goods
sold in bulk by Leo Lynch to the respondent Rosenfeld-Rovig
Company prior to an adjudication of bankruptcy.   The court
below entered a judgment dismissing the action.   The plain-
tiff has appealed.

The facts are as as follows:  For two or three years prior
to July 25, 1913, Leo Lynch was conducting a cigar stand
in the city of Seattle.   He had, prior to that time, purchased

[1]Reported in 151 Pac. 776.

goods upon credit from various wholesale houses. A few days prior to the 25th day of July, 1913, he stated to a representative of the respondent Rosenfeld-Rovig Company that he was in debt, and that he desired the Rosenfeld-Rovig Company to take over his stock of goods and fixtures in payment of their claim and the claims of other creditors. He stated at that time that the stock was of sufficient value to cover all his debts. The respondent Rosenfeld-Rovig Company, after taking an inventory of the stock on hand and the debts against the stock, acceded to his request, and the stock of goods and fixtures was transferred by a bill of sale to the Rosenfeld-Rovig Company for the express consideration of $437.32, being the amount of its claim against Mr. Lynch. At the time this bill of sale was executed, Leo Lynch made an affidavit, as required by Rem. & Bal. Code, § 5296 (P. C. 203 § 9). Accompanying this affidavit was a list of creditors with the amounts due and the post office addresses of the creditors. The total amount of this statement was $1,-384.98. Thereupon the Rosenfeld-Rovig Company took possession of the store and proceeded to manage the same.

After this transfer was made, a sister of Leo Lynch notified the Rosenfeld-Rovig Company that her brother was indebted to her in about the sum of $1,500. The representative of that company then explained to her the exact conditions under which it had purchased the store; that it intended to close the store out and pay the creditors named in the affidavit made by Leo Lynch; that Leo Lynch had not informed it that she was a creditor, and that her name was not among the creditors upon the list furnished with the affidavit. A few days later she approached the respondent Rosenfeld-Rovig Company again, offering to purchase the store. She was advised that it would not be profitable for her to do so, and she did not purchase it. Thereafter, and within ten days, the respondent Rosenfeld-Rovig Company sold the store to a third party for $1,500 cash. On the 4th day of August, the Rosenfeld-Rovig Company paid all the creditors, leav-

ing a balance in its hands of about $125 after all the debts were paid. Thereafter, on August 25, Pearl Lynch, the sister of Leo Lynch, filed a petition in bankruptcy in the United States district court. Thereafter, on October 9, Leo Lynch was adjudged a bankrupt in the United States district court, western district of Washington. The plaintiff was thereafter appointed as trustee in bankruptcy. It is conceded that Pearl Lynch is the only creditor in the bankruptcy proceeding. After the appointment of the trustee in bankruptcy, this action was brought to recover from the respondent the value of the stock of goods sold by Leo Lynch to the Rosenfeld-Rovig Company.

It is contended by the appellant that the transfer of the stock by Leo Lynch to the respondent Rosenfeld-Rovig Company was a fraud in law under § 60 of the United States bankruptcy law. Subdivision (b) of that section provides:

"If a bankrupt shall have procured or suffered a judgment to be entered against him in favor of any person or have made a transfer of any of his property, and if, at the time of the transfer, or of the entry of the judgment, or of the recording or registering of the transfer if by law recording or registering thereof is required, and being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and the judgment or transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person. And for the purpose of such recovery any court of bankruptcy, as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

It is apparent, we think, that the principal question in this case is whether or not the respondent, at the time it took the bill of sale from Leo Lynch, believed, or had reasonable cause to believe that Leo Lynch was insolvent and was there-

by giving a preference to his creditors. The trial court found that, at the time the transfer was made, the respondent Rosenfeld-Rovig Company did not believe, and had no cause to believe, that any preference was intended by either party.

Under the sales in bulk act in force in this state, Rem. & Bal. Code, § 5296 (P. C. 203 § 9), it is provided that every person who shall purchase any stock of goods in bulk shall demand and receive from the vendor a sworn statement of the names and addresses of all the creditors of the vendor, together with the amount of indebtedness owing or to become due such creditors. This statement was made by Leo Lynch at the time of the transfer. Section 5297, Rem. & Bal. Code (P. C. 203 § 11), requires that the purchaser of any stock of goods in bulk shall demand and receive from the vendor the verified statement; and if he does not do so, the sale is fraudulent and void.

Section 5298, Rem. & Bal. Code (P. C. 203 § 13), provides that any vendor of any stock of goods in bulk, who shall willfully make a statement which shall not include the names of all the creditors of the vendor with the amounts due, shall be deemed guilty of perjury.

As we understand the argument of the appellant, it is not claimed that there was any actual fraud in the transfer from Leo Lynch to the respondent. But it is argued that the transfer was a fraud in law because one of the creditors was omitted from the affidavit. Upon the trial, Leo Lynch testified that he had previously informed the respondent Rosenfeld-Rovig Company that he owed his sister some money, but at the time he made the affidavit stating the names of his creditors, he made no such statement. The persons present at the time the affidavit was made testified that he made no statement to the effect that he owed his sister anything. The trial court found that, at the time of the transfer, the respondent had no notice or knowledge that there was any debt owing by Leo Lynch to his sister; that the first notice the

respondents had of this fact was after they had taken possession of the stock of goods and were negotiating for the sale thereof, when Miss Lynch stated that she was a creditor of her brother. She permitted the property to be sold and the debts to be paid before any action was taken by her to avoid the sale. In the case of *Dunlop v. Thomas,* 28 Wash. 521, 68 Pac. 909, which was a case very similar to this case, in construing §§ 60 and 67 of the national bankruptcy act, we said:

"Conveyances which are null and void as against creditors under state laws and are not in good faith and for a present fair consideration, and none other, are fraudulent and void under the provisions of the bankruptcy act."

We think this principle must control in this case. The respondent Rosenfeld-Rovig Company did all it was required to do under the statute. It obtained an affidavit from Leo Lynch containing a list of his creditors, and stating that these were all of his creditors, and that there were no others. We think it is plain from the record that the respondent Rosenfeld-Rovig Company acted in good faith, supposing it was purchasing the stock for all the creditors, and that no creditor would be injured thereby, and had no notice that Mr. Lynch was insolvent at that time.

We find no error, and the judgment is therefore affirmed.

MORRIS, C. J., HOLCOMB, and MAIN, JJ., concur.